IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

STANLEY M. SCHWARTZ, §
§
          Plaintiff, §
§ Civil Action No. 3:07-CV-0978-D
VS. §
§
INTERNATIONAL FEDERATION OF §
PROFESSIONAL AND TECHNICAL §
ENGINEERS, AFL-CIO, CLC (IFPTE),§
et al., §
§
          Defendants. §

MEMORANDUM OPINION
AND ORDER

     Plaintiff's motion to remand and defendants' motions to
dismiss and for judgment on the pleadings present the question
whether the Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C.
§ 7101 *et seq.*, completely preempts plaintiff's state-law claim for
intentional infliction of emotional distress. Concluding that it
does, the court denies plaintiff's motion to remand, grants
defendants' motions to dismiss and for judgment on the pleadings,
and dismisses this case with prejudice.

I

     Plaintiff Stanley M. Schwartz ("Schwartz") was employed as an
administrative law judge ("ALJ") at the Dallas North Hearing Office
("DNHO") of the Social Security Administration ("SSA").[1] Schwartz

---

[1]The court recounts the background facts favorably to Schwartz
as the nonmovant. In deciding defendants' Fed. R. Civ. P. 12(b)(6)
motion to dismiss "[t]he 'court accepts all well-pleaded facts as
true, viewing them in the light most favorable to the plaintiff.'"
*In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir.

was eventually asked to serve as the acting DNHO Chief Administrative Law Judge ("Acting Chief Judge") until a permanent Chief Judge could be selected. He served as Acting Chief Judge from 2003 until May 2005. Among the responsibilities of the Acting Chief Judge was dealing with issues presented by representatives of the three labor unions that represented DNHO support staff and paralegals, attorneys, and ALJs.

Within weeks of becoming Acting Chief Judge, Schwartz began experiencing problems with representatives of defendant International Federation of Professional and Technical Engineers, AFL-CIO, CLC ("IFPTE")——the labor union that exclusively represents non-supervisory ALJs employed by the SSA——and defendant Association of Administrative Law Judges Judicial Council No. 1, IFPTE, AFL-CIO, CLC ("Judicial Council")——the union local that represents the DNHO ALJs. Defendant Christopher L. Williams ("Williams"), a non-supervisory ALJ employed in the DNHO, who is also the Judicial Council's representative, requested unrestricted access to a computer database that contained information on cases pending in the DNHO, as well as unrelated, sensitive material. Williams and

_____

2007) (internal quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (addressing Rule 12(b)(6) standard)). The same standard applies in deciding a motion under Rule 12(c). *See, e.g., Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 n.8 (5th Cir. 2002) (Fitzwater, J.) ("Rule 12(b)(6) decisions appropriately guide the application of Rule 12(c) because the standards for deciding motions under both rules are the same.").

defendant Donald J. Willy ("Willy"), an ALJ assigned to the Houston Hearing Office, but who as a Judicial Council Regional Vice President had responsibility for union issues arising in the DNHO, alleged that management staff who reported directly to Schwartz was falsifying data, requiring ALJs to travel unnecessarily and more frequently to remote hearing sites. Williams and Willy asserted that Schwartz had authorized this activity. If true, the allegations would have subjected Schwartz to criminal prosecution for falsifying government records, or to removal by the Merit Systems Protection Board ("MSPB").

Schwartz denied the request for unlimited access, but he provided Williams with certain data that he used in deciding which DNHO area needed the most attention, and he directed that a management employee analyze the data for Williams. Williams responded by filing a grievance on behalf of all DNHO ALJs, invoking provisions of the collective bargaining agreement ("CBA") to support the union's right of unlimited access to the case docket computer database. Schwartz denied the grievance.

Williams distributed Schwartz's response to the DNHO ALJs. He included a cover email that accused Schwartz of changing the labor relations in the office, and asserted that the prior atmosphere of local labor-management trust had dissipated. Williams claimed that Schwartz was intentionally falsifying data so that he could require ALJs to travel unnecessarily. He also made baseless allegations

that Schwartz had allowed management staff to falsify SSA official records, and Williams engaged in other conduct, including asserting that Schwartz had engaged in retaliatory acts. Schwartz later became permanent Chief Judge.

The conduct in which Williams and Willy engaged——making allegations of, and creating unrest about, mismanagement, illegal conduct, and intentional wrongdoing——caused Schwartz to become severely ill. Schwartz later decided to step down as Chief Judge. He announced his decision, but he agreed to stay on until May 29, 2005.

A few weeks before Schwartz concluded his tenure, Williams, with Willy's approval, filed another groundless grievance against him. It repeated many of the same allegations of the earlier one and was filed simply to inflict additional emotional distress. The allegations of the grievance, if true, would have established that Schwartz had engaged in criminal conduct, and would have given the MSPB grounds to remove him as an ALJ. When Schwartz published a defense of his actions, Williams responded with a sharp email that compared Schwartz to a dictator and offended Schwartz.

Months after Schwartz stepped down, Williams continued to make his life miserable by making baseless complaints to management about how Schwartz was "cherry picking" his cases.

Williams and Willy also conspired to deprive Schwartz of his seniority status for bidding on open office space. Schwartz was

therefore relegated to a paralegal's office for a year, although the union later decided——contrary to Williams and Willy's decision——to restore Schwartz's seniority status.

Earlier this year, Schwartz filed suit in this court against IFPTE, the Judicial Council, Williams, and Willy, alleging a single claim for intentional infliction of emotional distress. *Schwartz v. Int'l Fed. of Prof'l & Technical Engn'rs., AFL-CIP, CLC*, No. 3:07-CV-0555-D (N.D. Tex.) ("*Schwartz I*"). He sought to establish jurisdiction based on diversity jurisdiction of citizenship, but the court *sua sponte* raised the jurisdictional defect that complete diversity appeared to be lacking. *Schwartz I*, Apr. 6, 2007 Order at 1. In particular, Schwartz is a Texas citizen, and at least two defendants also appeared to be Texas citizens. *Id.* The court required that Schwartz "establish in writing that there is complete diversity of citizenship between himself and all defendants, *or he must demonstrate that the court has subject matter jurisdiction on some other basis*." *Id.* at 1 (emphasis added).

In response, Schwartz filed an amended complaint in which he dropped the two Texas citizens who were the subject of the court's order and sued only IFPTE and the Judicial Council. The court pointed out that his amended complaint was still defective, however, because if IFPTE and the Judicial Council were labor unions, Schwartz had not properly pleaded the citizenship of each of their members. *Schwartz I*, Apr. 12, 2007 Order at 2. The court

- 5 -

therefore directed that Schwartz file an amended complaint that properly alleged diversity jurisdiction. *Id.* at 3.

Schwartz determined that he could not establish complete diversity because IFPTE has Texas members. He then filed a pleading that the court construed as a Fed. R. Civ. P. 41(a)(1) notice of dismissal, and the court dismissed the case without prejudice.

Schwartz in turn filed suit in Texas state court, alleging the same claim for intentional infliction of emotional distress. IFPTE removed the case to this court under 28 U.S.C. § 1441(b),[2] alleging that Schwartz's claim is completely preempted by the CSRA and this court has federal question jurisdiction.

Schwartz moves to remand the case to state court. IFPTE moves to dismiss this action under Rules 12(b)(1) and 12(b)(6). The Judicial Council, Williams, and Willy move for judgment on the pleadings under Rule 12(c). Schwartz also moves to stay discovery until his remand motion is decided, for the return of his medical

---

[2] 28 U.S.C. § 1441(b):

> Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

records, for a stay of discovery, and to quash his deposition.  The Judicial Council moves to compel Schwartz's initial disclosures, answers to first interrogatories, and responses to first and second requests for production.

II

Schwartz argues that defendants' motions lack merit because this court's orders in *Schwartz I* establish that the court lacks jurisdiction over this case.  He maintains that if the court had any concerns about whether his intentional infliction claim was completely preempted, it would have alerted the parties to address it.  He cites several decisions of this court in which it has addressed the issue of complete preemption, and he maintains that the court did not address this issue because the doctrine was inapplicable to his claim.  The court respectfully disagrees.

In *Schwartz I* the court noted that Schwartz appeared to predicate subject matter jurisdiction on complete diversity, and that he asserted a state-law claim for intentional infliction of emotional distress.  The court's focus was on whether Schwartz had invoked the court's diversity jurisdiction by pleading complete diversity.  It had no occasion to address whether Schwartz's claim was completely preempted.  Even so, in the court's April 6, 2007 order, it specifically gave Schwartz the option of "demonstrat[ing] that the court has subject matter jurisdiction on some other basis," i.e., a basis other than diversity of citizenship.

*Schwartz I*, Apr. 6, 2007 Order at 1.  Schwartz did not argue that his claim was completely preempted and, therefore, that the court had federal question jurisdiction.  Indeed, had he made such an argument, he would have been defeating his ability to recover for intentional infliction of emotional distress, as the court explains below.

Accordingly, the court must reject the assertion that the court's orders in *Schwartz I* establish that it lacks subject matter jurisdiction.

### III

The court now turns to Schwartz's motion to remand. Defendants concede that Schwartz's state court petition alleges only one state-law claim.  They argue, however, that the CSRA completely preempts the claim, thereby conferring federal question jurisdiction.  Schwartz maintains that the CSRA lacks the preemptive force to completely preempt his state-law claim and, alternatively, that his claim for intentional infliction of emotional distress falls outside the scope of the CSRA.

### A

Because defendants removed this action from state court, they have the burden of overcoming an initial presumption against subject matter jurisdiction and of establishing that removal is proper.  *See Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).  "[D]oubts regarding whether removal jurisdiction is

proper should be resolved against federal jurisdiction." *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000) (citation omitted).

"Ordinarily, the well pleaded complaint rule governs federal question jurisdiction. Under the rule, '[r]emoval is not possible unless the plaintiff's "well pleaded complaint" raises issues of federal law sufficient to support federal question jurisdiction.'" *Ervin v. Stagecoach Moving & Storage, Inc.*, 2004 WL 1253401, at *2 (N.D. Tex. June 8, 2004) (Fitzwater, J.) (quoting *Rodriguez v. Pacificare of Tex., Inc.*, 980 F.2d 1014, 1017 (5th Cir. 1993)). Complete preemption, however, is an exception to the well pleaded complaint rule and gives rise to removal jurisdiction even though the federal question is not apparent from an examination of the complaint. *See Giles v. NYLCare Health Plans, Inc.*, 172 F.3d 332, 336-37 (5th Cir. 1999). When a statute completely preempts state causes of action, "the federal statute 'so forcibly and completely displace[s] state law that the plaintiff's cause of action is either wholly federal or nothing at all.'" *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 773 (5th Cir. 2003) (quoting *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir. 1995)). To determine whether Schwartz's claim is completely preempted, the court must decide whether Congress intended the CSRA to provide the exclusive remedy for the conduct about which he complains. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 9 (2003); *PCI*

*Transp., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 544 (5th Cir. 2005).

B

Although the precise question of complete preemption under the CSRA does not appear to have been decided, there is authority to support the conclusion that Congress intended the CSRA's administrative remedies to provide the exclusive remedy for the conduct that serves as the basis for Schwartz's claim for intentional infliction of emotional distress. In *Karahalios v. National Federation of Federal Employees*, 489 U.S. 527 (1989), the Supreme Court declined to recognize an implied private cause of action for federal employees against their union based on the CSRA, concluding that Congress intended that the Federal Labor Relations Authority ("FLRA"), a body created by the CSRA, have "exclusive and final authority to issue unfair labor complaints." *Id.* at 533. The Court concluded that the administrative remedy provided under the CSRA through the direction of the FLRA excluded other implied remedies. *Id.* at 536.

In *Bush v. Lucas*, 462 U.S. 367 (1983), the Court held that federal employees do not have a *Bivens*[3] remedy against their employer for violations of their constitutional rights. Pointing to the CSRA's "elaborate, comprehensive scheme . . . by which

---

[3]*Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

improper action may be redressed," the Court found a special factor counseling against creation of a *Bivens* remedy. *Id.* at 385. The Court acknowledged that its holding might provide federal employees with less than complete protection for violations of their legal rights, but it hesitated to upset the CSRA's "elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations[.]" *Id.* at 388.

In *United States v. Fausto*, 484 U.S. 439 (1988), the Supreme Court upheld the Claims Court's conclusion that a federal employee could not recover under the Back Pay Act. *Id.* at 440, 454. The Claims Court had held that "the CSRA comprised the exclusive catalog of remedies for civil servants affected by adverse personnel action." *Id.* at 443. The Supreme Court reasoned that the "CSRA 'comprehensively overhauled the civil service system,' creating an elaborate 'new framework for evaluating adverse personnel actions against federal employees.'" *Id.* at 443 (quoting *Lindahl v. OPM*, 470 U.S. 768, 773-74 (1985)). The Court noted that "[a] leading purpose of the CSRA was to replace the haphazard arrangements for administrative and judicial review of personnel action, part of the 'outdated patchwork of statutes and rules built up over almost a century' that was the civil service system." *Id.* at 444 (quoting S. Rep. No. 95-969, at 3 (1978)). It stated that "Congress replaced the patchwork system with an integrated scheme of administrative and judicial review, designed to balance the

legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Id.* at 445. The Court concluded that "[t]he CSRA establishes a comprehensive system for reviewing personnel action taken against federal employees." *Id.* at 455.

The First Circuit has held that the CSRA preempted a federal employee's state-law malpractice suit against a union attorney who advised the employee to participate in an unlawful strike. *Montplaisir v. Leighton*, 875 F.2d 1, 2-5 (1st Cir. 1989). The court relied on the "panoramic federal scheme for regulating federal employee relations" in concluding that the CSRA "establish[es] the sole mechanism for resolving labor conflicts in the federal arena." *Id.* at 2-3. "The statute created the FLRA and vested it with responsibility for, *inter alia*, supervising the collective bargaining process, promulgating administrative rules for federal labor relations, and adjudicating disputes over such matters as negotiability, bargaining units, arbitration, and representation elections." *Id.* at 2. Thus "Congress meant to vest the FLRA with exclusive and final authority to issue unfair labor practices complaints[.]" *Id.* at 3 (internal quotation marks omitted). "Performing the requisite analysis in this case leads to the inescapable conclusion that Congress intended to preempt state-law tort actions." *Id.* at 5. The First Circuit thought that the three Supreme Court decisions discussed above "establish beyond

peradventure that the disruptive effects of judicially-created, newly-implied rights of action upon CSRA's statutory scheme would far outweigh any concomitant benefits." *Id.* at 5 n.5.

The Ninth Circuit has also concluded that Congress did not intend for state tort claims to operate within the interstices of the CSRA. *See Saul v. United States*, 928 F.2d 829, 842 (9th Cir. 1991). In *Saul* an SSA employee sued his supervisors for defamation and intentional infliction of emotional distress based on their workplace conduct. *Id.* at 831. The Ninth Circuit reasoned that the goal of the CSRA was "'a single unified personnel policy which takes into account the requirements of all the various law and goals governing Federal personnel management.'" *Id.* at 833 (quoting S. Rep. No. 95-969, at 53, *reprinted in* 1978 U.S.C.C.A.N. 2723, 2775). According to the court, the CSRA offers an administrative remedy to federal employees who allege prohibited personnel practices. *Id.* The Office of Special Counsel ("OSC") must receive allegations of prohibited personnel practices and perform necessary investigations. *Id.* The *Saul* court also noted that the employee could have complained to the OSC about the conduct alleged in his state-law claim. *Id.* at 833-34, 841. The "prohibited personnel practices of the CSRA include taking personnel actions violative of its merit system principles." *Id.* at 833 (citing 5 U.S.C. § 2302(b)(12) (quotations omitted)). "The merit system principles include treating employees fairly and

equitably, 'with proper regard for their privacy and constitutional rights.'" *Id.* (quoting 5 U.S.C. § 2301(b)(2)).  The merit system also protects against arbitrary action and personal favoritism. *Id.* (citing 5 U.S.C. § 2301(b)(8)(A)).  "Personnel action" is an element of proving a prohibited personnel practice.  5 U.S.C. § 2302(b).  One such personnel action is "other disciplinary or corrective action".  5 U.S.C. § 2302(a)(2)(A)(iii).  The Ninth Circuit read the terms "corrective action," "arbitrary action," and "personal favoritism" broadly to encompass the supervisors' conduct, defamation, and infliction of emotional distress. *Saul*, 928 F.2d at 834.  The court pointed out that other circuit courts had similarly given a broad reading to the term "personnel action" in the CSRA.  *Id.* at 834 n.7.  "[T]he types of personnel action which can constitute grounds for a prohibited personnel practice are extremely broad, if not exhaustive." *Id.* (quoting *Carducci v. Regan*, 714 F.2d 171, 174 n.3 (D.C. Cir. 1983)).  The "controlling factor" in the preemption analysis was whether the employee could have challenged the action through the CSRA.  *Id.* at 841.  Thus because the employee could have redressed his state-law claims for defamation and intentional infliction of emotional distress through the CSRA, the CSRA preempted these claims.  *Id.*  The Ninth Circuit adopted the reasoning of the Eleventh Circuit that state claims "would interfere with the congressional objective of making the CSRA an '*exclusive*' forum for challenging personnel actions." *Id.*

(citing *Broughton v. Courtney*, 861 F.2d 639, 643-44 (11th Cir. 1988). "Yet the CSRA fails even to mention state tort law remedies. We infer that Congress did not mention any such remedies because it left no room for them." *Id.* at 842.

Relying on *Saul*, the Ninth Circuit held in *Blankenship v. McDonald*, 176 F.3d 1192 (9th Cir. 1999), that the CSRA preempted a federal court reporter's state-law claim for intentional infliction of emotional distress brought against her supervisors. *Id.* at 1195.

In a more recent Ninth Circuit case, a federal agency employee who did not receive a promotion brought claims for defamation and slander against a coworker who provided investigators a highly critical review of the plaintiff. *Mahtesian v. Lee*, 406 F.3d 1131, 1133 (9th Cir. 2005). The controlling question for determining whether the claims were preempted was whether the conduct about which the employee complained was within the scope of the CSRA's prohibited personnel practices. *Id.* The court held that, if the plaintiff's allegations were true, the coworker's actions fell within 5 U.S.C. § 2302(b) as a prohibited personnel practice. *Id.* at 1134. Section 2302 covers "[a]ny employee who has authority to take, direct others to take, recommend, or approve any personnel action." 5 U.S.C. § 2302(b). The court held that the coworker had the authority to "recommend" the plaintiff for employment, which was a personnel action. *Mahtesian*, 406 F.3d at 1134. If the

coworker exercised this authority without personal knowledge of the matters contained in the recommendation, the coworker would have violated the statute. *Id.* The plaintiff's state-law claims thus fell within the CSRA and were preempted. *Id.* at 1135. The employee brought a related state-law claim against the manager who supervised the hiring process, but the court held that this claim was also barred by the CSRA, which prohibits supervisors from considering recommendations or statements that are not based on personal knowledge. *Id.* at 1134 (relying on 5 U.S.C. § 2302(b)(2)).

The Fifth Circuit has also relied on *Saul* to conclude that the CSRA preempts state-law claims that enter into the areas covered by the CSRA. *Rollins v. Marsh*, 937 F.2d 134, 137 n.13 & 140 n.36 (5th Cir. 1991). In *Rollins* the plaintiff's federal employer disciplined him for negative publicity arising from the publication of photographs of his wife. *Id.* at 135-36. The plaintiff argued that his state-law claims fell outside the CSRA's scope, because he was disciplined for engaging in protected activity unrelated to his work. *Id.* at 138. The court rejected this contention, concluding that "[w]e have little doubt that these actions constitute personnel decisions under the CSRA and hence arise out of the employment relationship." *Id.* (footnote omitted). The court held that "[e]very circuit facing this issue has concluded that the remedies provided by the CSRA preempt state-law remedies for

adverse personnel actions." *Id.* at 140.

In another Fifth Circuit case, the plaintiff brought suit under the Federal Tort Claims Act for negligent acts that led to his resignation. *Guitart v. United States*, 3 F.3d 439, 1993 WL 347206, at *1 (5th Cir. Aug. 19, 1993) (per curiam) (unpublished table decision). The panel held that "[f]ollowing *Rollins*, we conclude that [plaintiff's] state-law claims were properly dismissed." *Id.* at *2. "To read the [CSRA] as the [plaintiff] suggests would ignore the CSRA's established monopoly as the remedy for federal employment-related disputes." *Id.* Although the plaintiff had no effective remedy under the CSRA, the court held that he had no other remedy for his employment-related claims. *Id.* at *3.

At least one district court decision also supports the conclusion that Congress intended the CSRA to provide the exclusive remedy for the conduct on which Schwartz relies to assert his claim for intentional infliction of emotional distress. In *Greene v. American Federation of Government Employees*, 2005 WL 3275903 (D.D.C. Sept. 7, 2005), a federal employee sued the union of his supervisee for making false statements about him while the union was prosecuting a sexual harassment grievance against him. *Id.* at *1. The court held that the "CSRA preempts a state tort claim if the claim falls within the purview of the Act." *Id.* at *3. "Because the plaintiff's allegations concern a grievance that a

coworker filed against him, as well as another federal employee's conduct resulting from that grievance, the court determines that his actions fall within the scope of the Act's provisions regarding personnel actions." *Id.* Thus plaintiff's state-law claims against the union were preempted. *Id.* at 4.

Based on these cases, the court holds that Congress intended the CSRA's administrative remedies to be the exclusive remedy for conduct covered by the statute.

IV

The court now considers whether Schwartz's state-law claim for intentional infliction of emotional distress falls within the purview of the CSRA.

A

As a threshold matter, the court addresses Schwartz's argument that, even if the CSRA completely preempts state-law claims, because most of Williams and Willy's outrageous conduct occurred after Schwartz concluded his tenure as Chief Judge and had no managerial authority, his dispute with them does not implicate labor-management relations. Schwartz maintains that, although the CSRA may completely preempt matters relating to personnel actions, his claim does not touch on this subject.

Although Schwartz relies on acts that occurred after he ended his service as Chief Judge, the hostility between Schwartz and Williams and Willy arose from an employment dispute covered by the

CSRA.  All of the harassing activity that forms the basis for Schwartz's claim for intentional infliction of emotional distress stems from Williams and Willy's allegations that Schwartz abused his case-assignment authority.

B

The court concludes that the CSRA provided Schwartz the exclusive remedies for the conduct of Williams and Willy that forms the basis for his claim for intentional infliction of emotional distress.  In 5 U.S.C. § 2302(a)(1), the CSRA defines a prohibited personnel practice as any conduct that violates § 2302(b).  Section 2302(b), in turn, prohibits "any employee who has authority to take, direct others to take, *recommend*, or approve any personnel action."  *Id.* (emphasis added).  Schwartz alleges that the grievances exposed him to serious disciplinary action, including removal from his position as Chief Judge.  If in the Ninth Circuit *Mahtesian* decision the plaintiff's coworker had authority to *recommend* a personnel action simply by opining to a hiring committee about the plaintiff's qualifications, Williams and Willy, as official union representatives, were recommending a personnel action by filing grievances that, if successful, would have resulted in adverse personnel action against Schwartz.  The CSRA includes "other disciplinary or corrective action" and "any other significant change in duties, responsibilities, or working conditions" within the definition of "personnel action."  5 U.S.C.

- 19 -

§ 2302(a)(2)(A), (A)(iii), and (A)(xi).  As the cases make clear, the definition of "personnel action" is to be interpreted broadly. *See, e.g.*, *Saul*, 928 F.2d at 834.

The conduct of Williams and Willy that forms the basis for Schwartz's claim would, if true, constitute prohibited personnel practices.  Persons covered by § 2302(b)——including employees with authority to recommend personnel action——shall not, *inter alia*, "take or fail to take any other personnel action if the taking of or failure to take such action violates any law, rule, or regulation implementing, or directly concerning, the merit system principles contained in section 2301 of this title."  5 U.S.C. § 2302(b)(12).  Section 2301, which spells out the merit system principles, directs that "all employees . . . should receive fair and equitable treatment without regard to political affiliation, race, color, religion, national origin, sex, marital status, age or handicapping condition, and with proper regard for their privacy and constitutional rights."  5 U.S.C. § 2301(b)(2).

The cases interpreting § 2301(b)(2) demonstrate that this provision applies even when none of the specific grounds of unfairness listed is implicated.  In *Anderson v. Green*, 884 F.2d 1394 (9th Cir. 1989) (unpublished table decision), the Ninth Circuit held that a plaintiff's state-law infliction of emotional suffering cause of action was preempted because the plaintiff "claim[ed] that she suffered emotional distress as a result of [the

defendant's] unfair treatment of her in the workplace." *Id.* at *1. In dismissing the plaintiff's claims, the court relied on § 2301(b)(2) as a general fairness requirement, because the plaintiff made no reference to any of the specific inequitable treatments enumerated in § 2301(b)(2), i.e., "political affiliation, race, color, religion, national origin, sex, marital status, age or handicapping condition," or in violation of the employee's "privacy and constitutional rights." *Id.* at *2.

Similarly, the Federal Circuit has construed § 2301(b)(2) as a broad fairness provision. *See Wilburn v. Dep't of Transp.*, 757 F.2d 260 (Fed. Cir. 1985). The court reversed a decision of the MSPB that a federal agency's decision not to hire the plaintiff and instead to close the vacant position did not violate the merit system principles. *Id.* at 262. The evidence reflected that the federal agency "abolished the newly created vacant position for reasons personal to [the plaintiff]." *Id.* Without mentioning any of § 2301(b)(2)'s specific grounds of unfairness, the court held that the federal agency's decision violated § 2301(b)(2) because "the linchpin of federal personnel management is fairness, i.e. employees who are similarly situated are entitled to similar treatment." *Id.; see also Nat'l Treasury Employees Union v. Egger*, 783 F.2d 1114, 1116 (D.C. Cir. 1986) (holding on basis of § 2301(b)(2) that OSC had jurisdiction over plaintiff's general claim of unfairness concerning federal agency's reclassification of

plaintiffs' jobs).

In a district court case, the plaintiffs sought judicial review under the Administrative Procedures Act of a federal agency's decision not to hire them on the basis that they had failed a polygraph test. *Croddy v. Fed. Bureau of Investigation*, 2006 WL 2844261, at *1 (D.D.C. Sept. 29, 2006). The plaintiffs' general allegations of unfairness brought their claims within the ambit of § 2301(b)(2). *Id.* at *5. "Plaintiffs' claim that Defendants' reliance on polygraph results is arbitrary, or that the polygraph process is somehow unfair, directly implicates [§ 2301(b)(2)], and therefore would be considered a prohibited personnel practice." *Id.*

The crux of Schwartz's claim is that Willy and Williams prosecuted groundless grievances against him that they knew lacked foundation. In prosecuting the grievances, Willy and Williams were essentially recommending that Schwartz be disciplined for actions he had taken as Chief Judge. Thus, as union representatives, they were recommending a personnel action, within the meaning of the CSRA. Schwartz acknowledges that these grievances exposed him to serious corrective action, including possible removal from his position. In light of *Anderson*, *Wilburn*, and *Croddy*, Willy and William's prosecution of groundless grievances against Schwartz would state a colorable claim under § 2301 (b)(2) for unfair or inequitable treatment of an employee.

Schwartz's allegation that Williams stripped Schwartz of his seniority status after he resigned as Chief Judge would also fall within the CSRA's remedial scheme. Schwartz contends that Williams, in causing Schwartz to lose his seniority status, singled him out and treated him differently from the other ALJs. If true, this claim would constitute a prohibited personnel practice of subjecting him to unfair or inequitable treatment. As Schwartz acknowledges, the effect of losing his seniority status was that he was relegated to inferior office space. A change to inferior office space would be a change in "working conditions" and thus a personnel action under § 2302(a)(2)(xi).

Schwartz alleges that, apart from the formal grievances and office space incident, Williams attempted to make his life difficult through harassing emails and turning the other ALJs against him. This would contravene the merit system principle of fair and equitable treatment of all employees. This treatment led to a significant change in Schwartz's working conditions. As Schwartz recognizes, the alleged harassment caused him to resign as Chief Judge.

The allegations of Schwartz's state-law petition therefore fall squarely within the scope of the CSRA. Before Schwartz brought this lawsuit, he also believed he had an administrative remedy under the CSRA. In his response to defendants' motion to dismiss, he admits having filed a complaint for administrative

relief with the OSC.  That the complaint failed to provide Schwartz the remedy he sought does not mean that his present claim is outside the purview of the CSRA.  It simply means that, as contemplated in cases like *Bush* and *Guitart*, Schwartz may lack a remedy for the conduct about which he complains.

Consequently, the court holds that the administrative remedies afforded in the CSRA provide the exclusive remedy available to Schwartz for the conduct that forms the basis for his state-law claim for intentional infliction of emotional distress.  The claim is therefore completely preempted, and the suit was removable under 28 U.S.C. § 1441(b).  Schwartz's motion to remand is denied.

V

The court now turns to IFPTE's motion to dismiss under Rule 12(b)(6) and the motion for judgment on the pleadings under Rule 12(c) of the Judicial Council, Williams, and Willy.  For the reasons explained above, the court holds that Schwartz's state-law claim is completely preempted under the CSRA.  It therefore follows that the claim must be dismissed under Rules 12(b)(6) and 12(c).

\*      \*      \*

Schwartz's June 14, 2007 motion to remand is denied.  IFPTE's June 12, 2007 motion to dismiss under Rule 12(b)(6), and the June 27, 2007 motion of the Judicial Council, Williams, and Willy for judgment on the pleadings under Rule 12(c), are granted. Schwartz's August 3, 2007 motion for stay of discovery, September

14, 2007 Rule 45 motion for return of plaintiff's medical records and stay of discovery, October 12, 2007 motion to quash deposition, and October 13, 2007 amended motion to quash deposition are denied as moot. The Judicial Council's September 17, 2007 motion to compel Schwartz's initial disclosures, answers to first interrogatories, and responses to first and second requests for production is also denied as moot. This action is dismissed with prejudice by judgment filed today.

**SO ORDERED.**

October 31, 2007.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE